JOURNAL ENTRY and OPINION
{¶ 1} Appellant Monique Martin appeals the trial court's refusal to conduct an inquiry pursuant to Batson v. Kentucky.[1] She assigns the following error for our review:
"I. The trial court committed clear error in failing to conduct aBatson hearing which would require defendant-appellee to articulaterace-neutral reasons for using her peremptory challenges to excuse twoAfrican-American females from the venire."
 {¶ 2} Having reviewed the record and pertinent law, we reverse the decision of the trial court and remand for a new trial. The apposite facts follow.
 {¶ 3} Martin filed a complaint against Nguyen in which she claimed she received a fungal infection while getting acrylic nails at a salon owned by Nguyen. Martin contended that as a result of the infection, she contracted osteomyelitis, which is an infection of the bone in her finger.
 {¶ 4} The matter proceeded to a jury trial. During the jury voir dire, Nguyen's counsel exercised two peremptory challenges to excuse the only two African-American jurors in the venire. Martin requested aBatson inquiry, which the trial court denied. The jury returned a verdict in favor of Nguyen. Martin now appeals.
 {¶ 5} In Martin's sole assigned error, she contends the trial court erred by denying her request for a Batson inquiry. We agree.
 {¶ 6} In order to state a prima facie case of purposeful discrimination under Batson v. Kentucky,[2] an accused must demonstrate: (1) that members of a recognized racial group were peremptorily challenged; and (2) that the facts and circumstances raise an inference that the prosecutor used the peremptory challenge to exclude the jurors on account of their race.[3] Although Batson is a criminal case, a private litigant in a civil case is also precluded from using peremptory challenges to exclude jurors on account of race.[4]
 {¶ 7} If the accused makes a prima facie case of discrimination, the state must then come forward with a neutral explanation.[5] As set forth in Batson:
"Once the defendant makes a prima facie showing, the burden shifts tothe State to come forward with a neutral explanation for challengingblack jurors. Though this requirement imposes a limitation in some caseson the full peremptory character of the historic challenge, we emphasizethat the prosecutor's explanation need not rise to the level justifyingexercise of a challenge for cause. See McCray v. Abrams[C.A. 2, 1984], 750 F.2d 1113, at 1132; Booker v. Jabe,(C.A. 6, 1985), 775 F.2d 762, 773, cert. pending, No. 85-1028, certiorarigranted and judgment vacated (1986), 478 U.S. 1001, But the prosecutormay not rebut the defendant's prima facie case of discrimination bystating merely that he challenged jurors of the defendant's race on theassumption — or his intuitive judgment — that they would be partial tothe defendant because of their shared race. * * * Nor may the prosecutorrebut the defendant's case merely by denying that he had a discriminatorymotive or `[affirming] [his] good faith in making individualselections'. Alexander v. Louisiana (1972), 405 U.S. 625, at 632,92 S.Ct. 1221, 31 L.Ed.2d 536. If these general assertions were acceptedas rebutting a defendant's prima facie case, the Equal Protection Clause`would be but a vain and illusory requirement'. Norris v. Alabama,(1935), 294 U.S. 587, 79 L.Ed. 1074, 55 S.Ct. 579, at 598. The prosecutortherefore must articulate a neutral explanation related to the particularcase to be tried. The trial court then will have the duty to determine ifthe defendant has established purposeful discrimination."[6]
 {¶ 8} Once a race-neutral explanation for the peremptory challenge has been offered, and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether a prima facie showing has been made becomes moot.[7]
 {¶ 9} Whenever a party opposes a peremptory challenge by claiming racial discrimination, the duty of the trial court is to decide whether granting the strike will contaminate jury selection through unconstitutional means.[8] The inquiry, therefore, is whether the trial court's analysis of the contested peremptory strike was sufficient to preserve a constitutionally permissible jury-selection process.[9] A trial court's finding of no discriminatory intent will not be reversed on appeal absent a determination that it was clearly erroneous.[10] The trial court, in supervising voir dire, is best equipped to resolve discrimination claims in jury selection, because those issues turn largely on evaluations of credibility.[11]
 {¶ 10} The record indicates Martin's counsel made a proffer on the record prior to the jury deliberation. In her proffer, counsel stated the only two African-Americans in the venire were excluded by Nguyen's counsel. She stated that based on the proffer she made a Batson objection during voir dire and that the trial court refused her request for Nguyen's counsel "to state on the record, reasons other than race that the defendant had excused the two black jurors."[12]
 {¶ 11} Although in her affidavit to this court Martin claims the trial court stated that Batson did not apply to civil trials, Martin did not include the trial court's alleged statement in her proffer; therefore, we shall not consider the statement in determining the appeal. Martin's proffer alone, however, is sufficient to preserve the issue for appeal.
 {¶ 12} We conclude the trial court committed reversible error by failing to allow Nguyen's counsel the opportunity to state nonracial reasons for excluding the two African-Americans. In order to establish a prima-facie case, litigants must show they are a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire.[13] In the instant case, Martin is an African-American. There were two African-Americans in the venire. Nguyen's counsel exercised two peremptory challenges to remove both of these individuals. Thus, a prima facie case was presented. It was, therefore, incumbent upon the trial court to conduct a Batson inquiry to determine whether Nguyen's counsel had a race neutral reason for excluding the two African-Americans. According to Martin's proffer, the trial court did not permit defense counsel to do so.
 {¶ 13} The Ohio Supreme Court held in Hicks v. Westinghouse, "trial judges must exercise considerable care in reviewing a claim for racial discrimination in jury selection. A judge should make clear, on the record, that he or she understands and has applied the precise Batson
test when racial discrimination has been alleged in opposition to a peremptory challenge."[14] The trial court in the instant case failed to fulfill this duty by neglecting to proceed with a Batson inquiry after being presented with a prima facie case.
 {¶ 14} Although Nguyen attempts to present nonracial reasons for the exclusion of the jurors on appeal, we cannot consider them because the inquiry must occur at the trial court level.[15] As the United Supreme Court in Hernandez v. New York[16] explained:
"In the typical peremptory challenge inquiry, the decisive questionwill be whether counsel's race-neutral-explanation for a peremptorychallenge should be believed. There will seldom be much evidence bearingon that issue, and the best evidence often will be the demeanor of theattorney who exercises the challenge. As with the state of mind of ajuror, evaluation of the prosecutor's state of mind based on demeanor andcredibility lies `peculiarly within a trial judge's province.'"[17]
 {¶ 15} Therefore, because the determination of whether the attorney's race-neutral explanation is sufficient turns on credibility, we are unable to conduct a Batson inquiry at the appellate level.
 {¶ 16} Nguyen contends Martin failed to preserve the issue for appeal because her proffer was not made contemporaneously with her objection. The proffer was made after the jury was sent into deliberations. We find no law that requires a proffer to be made contemporaneously with the objection. In fact, a trial court often delays the proffer of evidence until the end of the trial in order to allow the trial to proceed in a timely fashion. The purpose of a proffer is to make a record for appellate purposes, not to convince the trial court to change its ruling. Therefore, the timing of the proffer is inconsequential to preserving the appellate record.
 {¶ 17} Nguyen's counsel was present during the proffer as noted by the court reporter in the transcript. He, therefore, was given the opportunity to contest the proffer if he disagreed with Martin's recitation of what transpired at the side bar. Accordingly, Martin's sole assigned error is sustained.
Judgment reversed and remanded.
It is ordered that appellant recover of appellees her costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Karpinski, J., Concur.
[1] (1986), 476 U.S. 79, 106 S.Ct. 1712.
[2] (1986), 476 U.S. 79, 90 L.Ed.2d 69, 106 S.Ct. 1712.
[3] State v. Moore (1998), 81 Ohio St.3d 22, 28, 689, citing, State v.Hernandez (1992), 63 Ohio St.3d 577, 582, 589; State v. Hill (1995),73 Ohio St.3d 433, 444-445.
[4] Edmonson v. Leesville Concrete Co., Inc. (1991), 500 U.S. 614,114 L.Ed. 2d 660, 111 S.Ct. 2077.
[5] Hill, supra at 445.
[6] Batson, supra at 97-98.
[7] State v. Hernandez, supra at 583, citing Hernandez v. New York
(1991), 500 U.S. 352, 114 L.Ed. 2d 395, 111 S.Ct. 1859.
[8] Hicks v. Westinghouse Materials Co. (1997), 78 Ohio St.3d 95, 99.
[9] Id.
[10] Hernandez, 63 Ohio St.3d at 583.
[11] Hicks, supra at 102, citing, Batson at 98.
[12] April 29, 2004 Transcript at page 3.
[13] State v. Hernandez (1992), 506 U.S. 898, 113 S. Ct.
[14] Hicks, supra at 99.
[15] State v. Dockery, 1st Dist. No. C-000316, 2002-Ohio-2309.
[16] (1991), 500 U.S. 352, 363, 114 L.Ed. 2d 395, 111 S.Ct. 1859.
[17] Id. at 365.